LONE TREE DITCH CO. *et al.* v. RAPID CITY ELECTRIC & GAS LIGHT CO.

1.  Comp. Laws, § 5080, provides "the verdict of a jury" shall be deemed to have been excepted to. Section 4756 provides that the word "verdict" includes the findings of fact of a judge. Held, that in an action tried to the court the sufficiency of the evidence to support the findings of

fact may be determined on appeal without exceptions being taken to such findings.

2. Comp. Laws, § 5593, limiting the time for the commencement of an action to recover damages for land overflown by reason of a mill dam, has no application to an action to restrain one from maintaining a dam, or interfering thereby with prior water rights.

3. In an action to restrain defendant from maintaining a dam or from interfering with plaintiff's use of the water for irrigation and domestic purposes, evidence examined, and held to show that defendant's custom of holding the water during the day and letting it down in large quantities during the night was the immediate cause of an injury to plaintiff, who used the water for irrigation and domestic purposes.

4. Where the waters of a stream, across which a dam had been constructed, were capable of driving the machinery there situated only when the water was retained during the day and discharged at night, and where this procedure was the only thing in connection with the use of the dam of which the owners of prior water rights could justly complain, an injunction against the maintenance of the dam was not justified, a restraining of the injurious practice being sufficient.

(Opinion filed Februry 4, 1903.)

Appeal from circuit court, Pennington county. Hon. Levi McGee, Judge.

Action by the Lone Tree Ditch Company, a corporation, and others, against the Rapid City Electric & Gas Light Company, a corporation. From judgment in favor of plaintiffs, defendant appeals. Modified and affirmed.

*Wood & Buell*, for appellant.

Ownership and possession of land are essential for the acquisition of a righ to divert and appropriate waters from a runing stream, and inasmuch as it is conceded that the plaintiff corporation is not now and has not been the possessor or owner of any land, it cannot maintain this action. Slosser v. Salt River Canal Co., 65 Pac., 332.

To constitute a valid appropriation there must be a diversion and application of water to a beneficial use and the plaintiffs' rights are based upon the amount of water required or devoted to such use, and inasmuch as there is no evidence in the record to show the number of acres irrigated or the quantity of water required for that purpose, the respondents wholly failed to make a case.   Walsh v. Wallace, 67 Pac. 914; Toohey v. Campbell, 60 Pac. 396; Smith v. Hawkins, 52 Pac. 139; Low v. Rizor, 37 Pac., 82; Nichols v. McIntosh, 34 Pac. 278; Farmers' Ditch · Co. v. Ditch Co., 32 Pac., 722; Ft. Morgan Land Co. v. Ditch Co., 30 Pac., 1032; Kirk v. Bartholomew, 29 Pac., 40; Union Mill Co. v. Danberg, 81 Fed., 73.

The plaintiffs do not claim all the waters of Rapid creek, in fact the court has not found what the volume of said creek is, hence it cannot be said what part thereof the plaintiffs claim. On the vital propositions (1) beneficial use or cultivation of this land by plaintiffs, (2) injury to such use, and (3) that defendant was the author or cause of this injury, the proof signally fails. Farwell v. Sturgis Water Co. 10 S. D. 421; Edgar v. Stevenson, (Cal.) 11 Pac. Rep., 704; Heilbron v. Water Co. (Cal.) 22 Pac. Rep., 62.

Courts are always averse to granting an injunction against a municipality or any of its agencies, where the result would be embarassing or injurious to a large number of people. Lewis v. Denver Water Works, 34 Pac. Rep., 903; Joplin Cons. Mining Co. v. Joplin, 27 S. W. Rep., 406; Titus v. Boston 36 N. E. Rep., 793; Robinson v. Valparaiso, 36 N. E. Rep., 644; Dawson Water Works Co. v. Carver, 20 S. E. Rep. 502; Nalle v. Austin, 22 S. W. Rep. 668; Wintermute v. Tacoma L. &. W. Co., 29 Pac., Rep. 444., Ford v. Carterville, 10 S. E. Rep.,

732; McCullough v. Denver, 39 Fed. Rep., 307; Union St. Co. v. Chicago, 39 Fed. Rep., 723.

*Charles W. Brown,* for respondents.

Unreasonable use of water constitutes a private nuisance which equity will enjoin to prevent irreparable injury or a multiplicity of suits. Cooley on Torts, 584; Gould on Waters, §§ 208, 213-215, 218; Timm v. Bear, 29 Wis. 254; Coldwell v. Sanderson, 69 Wis. 52; Barrett v. Parsons, 10 Cush., 367; Brace v. Yale, 10 Allen, 441; Ware v. Allen, 140 Mass. 513; Whitney v. Wheeler &c Mills, 151 Mass. 396; Phoenix Water Co. v. Fletcher, 23 Cal. 482; Natoma W. & M. Co. v. McCoy, 23 Cal. 491; Bear River & Auburn W. & M. Co. v. N. Y. M. Co. Cal., 327; Hill v. Smith, 27 Cal., 482; Ferrea v. Knipe, 28 Cal., 341; Lobdell v. Simpson, 2 Nev. 274; Clinton v. Myers, 45 N. Y., 511; Strobel v. Kerr Salt Co. 164 N. Y. 303; 51 L. R. A. 687; Gardner v. Newburgh 2 Johns Ch 162; 3 Pom. Eq. Jur. 1,357.

The plaintiffs are not estopped to complain of such unreasonable use. Sutton v. Cons. Apex Min. Co. 14 S. D. 33, 89 N. W. 1020; Scott v. Toomey, 8 S. D., 639; Lux v. Haggin, 69 Cal. 255; Stochman v. Riverside, L. & T. Co. 64 Cal. 57; Biddle Boggs v. Merced Min. Co., 14 Cal. 367; Morrill v. St. Anthony Falls, W. P. Co. 26 Minn. 222.

Fuller, J. This action by the corporate owners of a prior water right to restrain the defendant corporation from maintaining a dam across Rapid creek at Rapid City, and from interfering in any manner with their use of the water for irrigation, agricultural, and domestic purposes, resulted in a judgment for plaintiffs, and defendant appeals.

Prior to March 14, 1882, respondents lawfully located and constructed the Lone Tree ditch, thereby duly appropriating 1,500 inches of the waters of Rapid creek; and during the year 1890 appellant erected the dam complained of, and, in order to obtain sufficient power to operate an electric light plant in Rapid City, has since that time held at least three-fourths of the water during the entire day for the purpose of discharging it in large quantities at night, thus materially interfering with respondents' use of the water for irrigation and domestic purposes. In this state it is not necessary to take an exception to findings of fact in order to have the sufficiency of the evidence determined on appeal, and the contention of counsel for respondents to that effect is untenable. "The verdict of the jury, the final decision in an action or proceeding, * * * and an order or decision made in the absence of a party, are deemed to have been excepted to." Comp. Laws, § 5080. Section 4757: "The word 'verdict' includes not only the verdict of the jury, but also the finding upon the facts, of a judge, or of a referee appointed to determine the issues in a cause." When facts are tried by the court, judgment is rendered upon its decision, which consists of findings of fact and conclusions of law, separately stated. Comp. Laws, §§ 5066, 5067. As the action did not accrue within two years after the completion of the dam, and for the reason that appellant erected its electric light plant at great expense, and has operated the same for many years by means of the water so retained and used, with the knowledge and acquiescence of respondents, it is contended that they are now estopped from interfering with its right to maintain such dam and hold the water during the day time. Section 5593 of the Compiled Laws, limiting the

time for the commencement of an action to recover damages for land overflown by reason of a milldam, has no application to this action in equity for preventive relief and the essential elements of an estoppel by conduct are not disclosed by the record before us.

While the evidence shows that respondents, or some of them, in the cultivation of their arid land, from year to year, have taken water from the ditch for irrigation and domestic purposes, there is nothing to show the amount of land irrigated, or the quantity of water required for such purposes by each or all of the persons entitled to its use. The evidence shows, and the court found, that respondents' flume and ditch were located 10 miles below appellant's dam, and that there are now in use several intervening ditches, by means of which the owners lawfully appropriated water prior to the rights of either party to this action. Notwithstanding an attempt to show that respondents would not be benefitted if the water was allowed to pass over and through appellant's dam uniformly day and night, as the full supply would be exhausted by the owners of intervening ditches, it was conclusively established by competent testimony that appellant's retention of the water during the day was the immediate cause of substantial injury alleged in the complaint. Respondent Buckingham testified in part as follows: ''The character of the land is arid, and it is necessary to have the waters—the use of the waters—of this stream to raise hay, grain, and other crops. I have noticed for the last few years—from 1890, or thereabouts—that there has been a fluctuation in the flow of the water at different times of the day. We have more water at some portions of the day than at others. There is a scarcity in the morning. You can see the

difference when there is plenty of water in the creek. In the forenoon the water is low in our locality. It is nearly exhausted at that period of time, and it is impossible to obtain water for irrigation purposes in the ditch. About noon the water in the ditch raises, and goes down again in the night. In the forenoon we can't do much irrigating, in the afternoon we have to stay with the water, and in the night it runs where it pleases. I do not know any cause for the water being at low stages in the forenoon and raising later in the day. I understand that they hold the water up at the electric light plant, and I guess they do. * * * It is up in the evening. It falls off some time in the night, and it is down in the morning. We have more water in the afternoon than in the forenoon. The ditches are only dry in the forenoon. There is a great deal better flow in the afternoon than in the forenoon. The water don t come regularly. In the forenoon we have none to work with, and in the afternoon it goes to waste. In the forenoon we are wasting our time for nothing. I never irrigated in the nighttime. It might be done by moonlight." From the testimony of respondent Brenan we quote as follows: "I have been trying to irrigate my place when I could get water without being interrupted. About 275 to 280 of my 320 acres can be irrigated if the water is not interfered with. I can't say exactly. And I could irrigate more if I had water. We would not have any crops at all without irrigation. It is absolutely necessary to irrigate in order to secure a crop in this county. No change has been made in the size of our ditch since the time of its completion. From 1885 to the present time the gauge is just the same. And the gate is just the same. It has not been cleaned out for six or eight years. * * * I am conversant

with the fact that the defendant electric light company has been in the habit of holding up the water for a period of hours, and then discharging for another period of hours. I mean they hold up the water during the daytime and let it run out at night to run their plant. This is done by a dam constructed across the creek about three-quarters of a mile west of the original town site of Rapid City. It may be a mile. They began to hold the water some time after they constructed their second dam—some time after 1890. It was after they added their incandescent dynamo to the plant. They hold the water up there during the day, and let it go out at night. It lessens the volume of water in the stream in the afternoon and raises it in the evening. It prevents irrigation, and having less water than you are entitled to in the afternoon, and having less than enough to work with in the afternoon. * * * It is a damage to the people having stock on their places. I rent my pasture, and they are objecting because of the channel raising and lowering in the creek. And it keeps the ice further back in high water than in low water, and in low water it causes the cattle to have to go in over the ice, which they would not have to do; and it is a damage to all persons using the water. George Mentch, Isaac Cramer, Robert Lee Platt, George Buckingham, Emma Buckingham, Maurice Keliher, Eugene Holcome, and James Brenan have land abutting the creek. They are all riparian except Platt, Chase, and Kimble. The holding of the water, particularly in the winter time, makes it difficult for the plaintiffs to keep the water places open for watering stock, on account of the raising and lowering of the creek and freezing of ice at the part of the valley where my place is. The flow of the water is retarded so that

it is late in the afternoon when the raise comes, and then it flows over the bank, and then recedes again late at night, and for that reason new places have to be opened all the time. This condition never existed at all previous to the holding of the water of Rapid creek.   Ice would freeze stationary.   When the water is low, it will freeze at one level, and when the water is high or raises it will freeze at another, and prevent the stock getting water."   Concerning the effect of appellant's retention of the water during the day, another witness states that: "You cannot get a steady flow from your ditches onto your land.   It affects the irrigation after two or three o'clock in the afternoon.   For instance, you had a piece of land two or three rods wide.   You turn the water onto that land, and it may get half way across, and the water stops flowing, and you have got to wait until the water comes down again the next day to get the water over the rest of the land, and in that way you have to irrigate the upper part of the land two or three times before you can get the whole of it irrigated.   Parts get too much and part not enough, and then by the time you get down to the dry land it quits again."   By other witnesses the foregoing testimony is fully corroborated, and it was further shown that the retention of the water by appellant rendered the watering of respondents' live stock precarious, and at times during the winter impossible.

Rapid creek is a nonnavigable stream rising in the mountains about 40 miles west of the city of Rapid City, and empties into the Cheyenne river just below the riparian premises of respondents.   At ordinary stages, and when unobstructed, there is probably something less than 1,800 inches of flowing water, which, by detention during the day, is sufficient to operate the

electric light plant constructed by appellant at an expense of $35,000. By the erection of a dam on its own land, a valuable legal right was acquired to use the water in a reasonable way for the purpose of supplying the city of Rapid City with electric lights, and any substantial infringement upon that right causes appreciable injury to the inhabitants of such municipality, and greatly diminishes the value of appellant's property. It is therefore doubtful, in the nature of the case, if respondents are fully entitled to a judgment by which appellant is ''perpetually enjoined and restrained from damming up or obstructing the waters of said Rapid creek, or preventing the natural flow thereof, so as to cause damage or injury to the plaintiffs, or either of them, as the owners of their said water right and lands, or to prevent the said waters from flowing in the day time into the plaintiffs' said ditch and flume, and to and upon the plaintiffs' said lands, or to interfere in any manner with the irrigation of the said lands of the plaintiffs, or with their use and enjoyment of their said lands and water right.'' Without a dam to stop the flow of water and fill its reservoir, appellant's valuable privilege is unavailable, and a perpetual injunction against ''damming up or obstructing the water of said Rapid creek'' practically destroys its right to use the water at a proper time and in a reasonable manner. For the purpose of operating machinery adapted to the ordinary condition of Rapid creek, no good reason is shown why appellant may not maintain its dam and reservoir, without causing any one more than incidental detriment, but to shut down the gate and detain the water during the day, to be rapidly discharged at night in a quantity that respondents cannot utilize, deprives them of a fair participation in the benefits of the stream, and

constitutes an unreasonable use of the water.    While  perfect
equality of right is not ascertainable from  the record,  as  the
amount of water to which each party is entitled cannot be def-
initely determined, it is obvious that the  machinery  by  which
the electric light plant is being operated requires more  power
than the stream can furnish at  an  ordinary  stage,  without
great detriment to respondents.    So far as shown by the  evi-
dence, the only injury of  which respondents can  justly  com-
plain is remedied by  enjoying  the  habitual  detention  of  the
water during the day for the purpose of its release at night in
unusual quantities, and to that extent the judgment of the trial
court is equitable, and sustained by the great weight of authority.
After mentioning some of the circumstances upon  which  the
reasonable use of water depended in  Timm v.  Bear,  29  Wis
254—a case similar upon principal to this—Chief Justice Ryan,
speaking for that court, employs the following  language:  "The
defendant had no right to deprive the plaintiff of  the  ordinary
and natural flow or passage of  the water in  the stream—  that
is, in quantities as the same  as  would  naturally  run—longer
than was necessary to raise a suitable head for his  own  mill,
and to propel or run the machinery therein with  convenience
and profit, such machinery  being  reasonably  adapted  to  the
size of the stream. * * * In other words, no proprietor of a mill
can put a forty-five inch wheel into a thirty-inch stream, under
the proper head, and then claim the right  to  detain  and  dis-
charge the water in quantities sufficient to drive such wheel to
its full capacity, to the injury of other mill owners  below  him
on the same stream.    Such a use of the water  would  be  un-
reasonable, within the rule laid down in the instruction.    It is
not in porportion to the size or capacity of  the  stream,  and

necessarily involves unreasonable detention of the water to obtain the requisite power, and then discharge of it in unreasonable or excessive quantities. when the power is applied. For these reasons, and in view of these facts, which the evidence tended to establish, as well as in view of the other evidence given, we are of the opinion that the motion for a nonsuit was properly denied." Among the numerous decisions similar upon principle and consonate with our view of this case, are the following: Merritt v. Brinkerhoff & Van Wagenen, 17 Johns, 306, 8 Am. Dec. 404: Natoma Water & Mining Co. v. McCoy, 23 Cal. 490; Ferrea v. Knipe, 28 Cal. 341, 87 Am. Dec. 128; Gehlen v. Knorr (Iowa) 70 N. W. 757, 36 L. R. A. 697, 63 Am. St. Rep. 416; Gould on Waters, § 218. By maintaining the dam and appurtenances so that the natural flow of the stream may pass on uniformly and at all times, respondents receive the relief to which they are equitably entitled and to the extent of perpetually restraining appellant from withholding the water during the day and discharging it in unusual quantities at night, the decision of the trial court will not be disturbed.

Modified in conformity with this view, the jndgment of the circuit court is affirmed. Each party will pay its own costs in this court.