## KELLY v. WHEELER.

A certificate of the trial judge that all rulings made over appellant's objections were excepted to without the formality of an exception does not properly preserve exceptions to the rulings, but the exceptions must be incorporated in the bill of exceptions.

A bill of exceptions duly settled will not be rejected on appeal because of erasures therein of the notation of an exception at each place where the same appeared in the proposed bill, especially where the record shows that the bill as originally drafted was correct in form, and the erasures were made by the trial court at the request of respondent's counsel.

Under Rev. Code Civ. Proc. § 293, providing that the verdict shall be deemed to have been excepted to, and Rev. Civ. Code, § 2465, defining the word "verdict" to include a judge's findings of fact, it is not necessary to take an exception to the findings of fact to have the sufficiency of the evidence determined on appeal.

To constitute a binding contract, the minds of the parties must meet.

Evidence held not to establish a contract between plaintiff and defendant for a joint purchase of real estate, so that neither party could compel performance by the other.

(Opinion filed, February 10, 1909.)

Appeal from Circuit Court, Fall River County. Hon. Levi McGee, Judge.

Action by Edmond S. Kelly against Williard A. Wheeler From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

G. M. Cleveland, for appellant. Eastman & Dudley, for respondent.

WHITING, J. This action comes before this court upon an appeal from the judgment of the circuit court, and from the order of said court denying a new trial herein. This action was tried to the lower court without a jury, and was brought by the plaintiff to compel the defendant to convey to the plaintiff a half interest in certain lots which the plaintiff claims the defendant had pur-

chased from a third party, taking the deed to himself, at a time when there existed between the plaintiff and defendant a contract under which these parties occupied the position of partners as regards this particular transaction. The plaintiff claimed that, under the facts as they existed, the defendant held the title in trust for both the plaintiff and defendant. The judgment upon the trial was for the plaintiff for the conveyance to the said plaintiff by said defendant of an undivided half interest in the five lots described in the complaint.

There is nothing in the form of the pleading out of the ordinary, and no statement of the contents thereof is necessary here. Upon the trial of the case it appeared that whatever agreement or contract, if any, existing between these parties, was evidenced by the correspondence which had been carried on between these parties prior to and immediately succeeding the purchase of the lots by the defendant, and the question as to whether or not there was such a contract as would bind defendant to convey a half interest in said lots depends entirely upon the sufficiency of the contents of the letters which passed between these parties to constitute such a contract.

Certain objections were interposed by the appellant to the admission of certain evidence, including exhibits which formed a part of the correspondence between the parties, and the question of the admission of this evidence is raised upon this appeal; and, in connection therewith, it is necessary to pass upon certain points raised by the respondent upon appeal. The respondent claims that this court cannot consider any claimed errors on admission of testimony, for the reason that no exceptions were saved to the rulings of the court thereon, and the respondent also claims that there is no proper bill of exceptions upon this appeal. An examination of the original record sent up from the circuit court, especially that part thereof designated the "bill of exceptions," shows clearly this condition of affairs. It appears from the certificate of the judge that it is the custom in said court to consider all rulings excepted to by the party over whose objection the rulings were made, and in the preparation of the bill of exceptions appellant's counsel, following the rule which has since the preparation of said bill of ex-

ceptions been laid down in this court in the case of McLennon v. Fenner, 19 S. D. 492, 104 N. W. 218, as the proper rule, noted in said bill of exceptions immediately after each of said rulings the fact that an exception was taken thereto; but upon the settlement of such proposed bill, and presumably at the suggestion of counsel for respondent, the court erased the notation of such exception at each place where the same appeared in such proposed bill, and then as in the case of McLennon v. Fenner, supra, attempted to cover the matter by a certificate as above referred to reciting the custom in said court. Under the ruling in said case of McLennon v. Fenner we shall have to disregard such claimed errors; the exceptions to same not having been properly preserved. But respondent further claims that, owing to these erasures which were made in the proposed bill, there is now no bill of exceptions that can be considered by this court, and they cite the case of Dyea Electric Light Co. v. Easton, 15 S. D. 572, 90 N. W. 859, wherein it was held that the engrossed bill finally settled by the court should be without interlineation or erasure. The decision in the case just mentioned was aimed to correct a prevalent practice under which bills of exceptions as settled were often in such condition, owing to erasures and interlineations, slips pasted thereon, etc., as to be of practically no use when it became necessary to go back of the abstracts to refer to such purported bills of exceptions, and it was certainly not intended to lay down any rule by which a proposed bill duly settled would be rejected in this court because there happened to be a few erasures, and, furthermore, we are surprised that respondent should raise that question in this particular case when it appears clearly from the record that the bill as originally drafted was absolutely correct in form and such erasures as appeared therein came there by the act of the trial court, and undoubtedly at the suggestion and request of counsel who are now asking for this paper to be disregarded owing to such erasures.

Respondent also contends upon this appeal that this court cannot go into the question of the correctness of the findings of fact or the sufficiency of the evidence to support the same for the reason that no exceptions were ever filed or taken to the said findings of fact or any of said findings. The respondent has cited a large

number of cases in support of his position, but counsel on both sides have evidently overlooked the case of Lone Tree Ditch Co. v. Rapid City Electric & Gaslight Co., 16 S. D. 451, 93 N. W. 650, wherein Justice Fuller in construing sections 5080 and 4756 of the old Compiled Laws, being section 293, Rev. Code Civ. Proc., and section 2465, Rev. Civ. Code, held as follows: "In this state it is not necessary to take an exception to findings of fact in order to have the sufficiency of the evidence determined on appeal, and the contention of counsel for respondents to that effect is untenable." Therefore, regardless of the rulings in other states, under the sections of our statute above referred to and the decision of this court, the law of this state is settled against the contention of the respondent.

Respondent also contends that the record does not contain sufficient specifications of the particulars in which the evidence is claimed to be insufficient to suport the findings. We cannot agree with counsel upon this point. It would serve no good purpose to reproduce in full the specifications as contained in the record herein, and we will only say that, while perhaps the same might have been worded so as to have been more specific and call more direct attention to the points wherein it is claimed that the evidence is insufficient, yet we believe that these specifications were sufficient to direct the attention of the court to the points now contended by the appellant.

This leaves for our consideration the one question as to whether or not the evidence was sufficient to sustain the findings of fact. As hereinbefore stated, the contract, if any existed between the parties hereto, was evidenced by the correspondence between them, and upon the trial the plaintiff testified that prior to the purchase of the lots in question through correspondence with the defendant they had reached an agreement under which they should unite in the investment in real estate at Hot Springs, S. D., the home of the plaintiff; defendant being a resident of Nebraska, but intending to return to Hot Springs, where he had formerly lived. Some 11 exhibits were produced and received in evidence during the course of the trial, 9 of which were letters written either by the plaintiff to the defendant or by the defendant to plaintiff,

and plaintiff contends that there were other letters both antedating these and also letters written and received between the dates of the first and last of these exhibits, and from the exhibits it is quite apparent that there must have been at least two letters, not produced, written between the dates of the first and last exhibits. It is claimed by the plaintiff that he himself, having been desirous of purchasing the five lots in question, had attempted to buy them for himself before this agreement between himself and defendant was entered into as claimed by plaintiff, and that he had failed in making such a purchase. These five lots in question were situated in a body in a row side by side, and one of the end lots was adjacent to property owned by the defendant. The court found that there was a contract between these parties for the purchase of all five lots in partnership; the plaintiff having sworn that that was the agreement contained in the letters. We think that in this finding the court was in error, and clearly so; that, while there might be evidence sufficient to warrant a finding to the effect that four of these lots were to be bought for the joint benefit of the parties hereto, yet it clearly appears that there was nothing showing an agreement under which the lot adjoining defendant's property was to be purchased for other than the sole benefit of defendant. There is no dispute in this case as to the rules of law. It is too well established to admit of any controversy that, in order for there to be a binding contract, the minds of the parties must meet, and that up to such time as there is a meeting of the minds there can be no contract. Taking this rule of law as our guide, we will briefly review the testimony in this case.

After defendant had testified that there was an agreement entered into for this joint venture as claimed by him, and after he had further testified that such agreement was made through correspondence, his attention was directed to that correspondence which was produced upon the trial. This correspondence, as evidenced by the exhibits, commences in May, 1902, and closes April 1, 1903, and the defendant appears to have received his deed to said lots some time in March, 1903.

The first exhibit received in evidence was a letter from plaintiff to the defendant under date of May 23, 1902, in which letter,

after referring to the evident intention of defendant to return to
South Dakota and speaking about the good prospects there, he
writes: "Enclosed I send you Bert Jones' address, and I believe
you had better take the purchase of those lots up direct with him.
If we can be of any assistance, just let your wants be known."
The Bert Jones referred to was the owner of the lots in question.
The next letter is dated December 15, 1902, from plaintiff to de-
fendant, in which he says: "I offered Jones $300 cash for his lots
up by your house, but he would not take it.   I think $350 might
have bought them.   If you will write him and offer him $350, I
will go in on them with you if you want me to."   It is quite ap·
parent from this letter that the plaintiff did not at that time under-
stand that there was a contract between himself and the defendant
in regard to any joint venture in the purchase of these or any other
lots, and upon a careful reading of his evidence it is quite appar-
ent that it is upon this and succeeding correspondence that he bases
his contention that there was an agreement, but does not base it
upon any letters preceding the date of those in evidence.   In view
of the contents of this letter, no matter what previous correspond-
ence they had, he could hardly contend that their minds had met
upon any agreement touching the lots in question and which were
the lots referred to in this letter of December 15, 1902.

The next letter in order of date is a letter from the defendant
to the plaintiff under date of January 17, 1903, and without ques-
tion is in answer to the last letter above mentioned.   This letter is
as follows: "Your letter received some time ago.   I wrote to Jones
about those lots, and offered him three hundred and fifty dollars
as you suggested, but his mind must be up in the thousands as
he never answered me.   Have some real estate agent up there
write him in a way to secure them for sale as listed, then we can
find out what he holds them at.   I would be willing to give him
$100.00 each lot.   Especially the ones next to mine."   At this point
we have the nearest to an agreement that these parties appear to
have arrived at.   The defendant does not refer to the offer of
plaintiff to go in with him on the purchase of these lots, nor in
neither of these letters is there any reference to the terms under
which they would go in, but in this last letter he expresses a de-

sire for the plaintiff to assist in getting these lots, and said what he would be willing to give for same. We hardly think, however, that any person would claim that under these two letters either person could have purchased these lots and held the other for a share of the purchase price. Certainly the defendant could not have purchased them and held the plaintiff therefor simply upon the strength of the letter of December 15th.

The next letter in order of date is one of February 23, 1903, also from the defendant to the plaintiff, and is as follows: "Enclosed I send you a letter I received from A. F. Jones who wants five hundred dollars for his five lots. Are they worth it? I have concluded that I will buy the one next to mine if he will sell it separate for $100. That leaves four lots from the corner back. Now if you think it would be a good investment I will go in halves with you and we will buy the four together, or do you think there is other lots up there that would be a better investment at this time?" This letter certainly shows that at that time defendant did not consider there was any contract existing between him and plaintiff. He specifically states that he will buy one lot for himself if he can get it, to wit, the lot next to his own property, and he also offers to join with the plaintiff in the purchase of the other four, each to have a half interest.

The next letter is from the plaintiff to the defendant answering this last letter and dated February 25, 1903. The parts of the same referring to this matter are as follows: "Answering yours of the 23d, Stewart and I have just been up to look at those five lots of Jones and the one next to your house is the best one and is worth $100. Now you know when we bought a lot once together I told you I was a hoodoo in any real estate deal, but Will says he will go in with us if satisfactory and we will buy the five lots then you keep one next to your house if you want it and the three of us own the other four or the three of us take all five, just suit yourself. Or Stewart says buy the five and let you keep the one next to your house at $100, and he and I will take the other four at $400." The above is all of this exhibit that is material in this case, and it very clearly shows that plaintiff did not even then claim to have had any contract with the defendant under which the

defendant was bound to give him a half interest in these lots if purchased.  He recognizes the offer made by defendant two days before, and concedes the right of defendant to keep the one lot if he wishes to, but he does not even accept defendant's offer to go in halves on the other four.  He seeks to bring in a third party on the four lots or else leave out the defendant and he and this third party take the four, or all three of them take the five lots. Clearly no agreement had been reached at this point; the defendant simply making an offer which, if accepted, might result in a contract.

The next letter in order of date is from the defendant to the plaintiff, dated March 13, 1903, and the parts thereof in any way bearing on the issues in this case are as follows: "I think I will get the Jones lots all right if some other person does not offer him more before he gets the deed made out.  I expect to hear from him in a day or so.  He came back at me to pay the 1902 taxes which is $3 per lot which I agreed to do, and ordered him to send it to the bank at Stuart so he would not think I was buying them to sell or for some other person.  I was thinking that if I got those lots I would build something upon them to bring in a revenue and if that would be satisfactory to you, all right.  We can arrange that when I come up.  Send me W. W. Stewart's birthday so I can cast his horoscope, year, month, day, hour and I can tell whether he will be a hoodoo to us or not."  This letter clearly did not accept any one of the offers made by the plaintiff, and intimated that the defendant might like to keep all these lots. but left that matter to be arranged when he came up.  The letter also shows that the writer had not yet determined whether to accept the offer of this third party to go in on any deal that was made; there being certain matters which he desired to determine before making such decision.  There was clearly no contract at this time.

The next letter in evidence is from the defendant to the plaintiff under date of March 29th, 1903, and clearly shows that the defendant had received a letter from the plaintiff under date of March 27th, which letter was not offered in evidence.  There is absolutely no evidence as to the contents of this letter of March

27th, except what appears from the letter of March 29th. At this time from the former correspondence we find that the defendant had offered plaintiff the opportunity of going in on halves, which offer was the only one he had made, and, no matter what the contents of the letter under date of March 27th might have been, it could not have been the consummation of any contract unless it was an acceptance of the only offer that was outstanding, and, if it had been sufficient to have been an acceptance of that offer, it would become the foundation of a claim to but four lots. But it seems quite apparent to us from the wording of this letter of March 29th that the plaintiff in his letter of the 27th did not accept defendant's offer. This letter of the 29th reads as follows: "Yours of the 27th at hand this morning, and in reply will say that I have a deed from Sarah L. Jones to the five lots but it was a little defective and I am writing to get it corrected, then when I come up I will bring a deed in blank and we will figure on what to do. I would of liked to retain a one-half interest in the four lots but if you desire to have Stewart in, suppose we divide on three lots which would figure out $100.00 each. How would that suit you?" The above is all that is material to this case, the remainder of the letter touching upon what he thinks could be done with these lots. From this letter it is very evident that the plaintiff in his letter of the 27th did not in any way object to defendant retaining the one lot and had undoubtedly again suggested the letting in of Stewart on the purchase of the other four lots. The defendant did not accept any of these propositions and expresses a desire to retain a half interest, and makes a new proposition to let Stewart in and let the division apply to three lots.

There is no letter in evidence purporting to be an answer to this letter of March 29th, and the plaintiff insists that he wrote such a letter, and that in that letter he endered to the defendant the $500 with which to pay for these lots, and, furthermore, claims that by the letter he then wrote he closed a binding contract. He states in relation to this letter which he claims he wrote in answer to the one of March 29th: "I told him in that letter in answer to Exhibit 2, (letter of March 29th) that he wanted to retain a half interest, and I told him I had talked to Mr. Stewart and Mr.

Stewart said that was all right. * * * I offered to send Mr. Wheeler the money down to Stuart, and wait until he came up to settle it up." Again, he testified in relation to this same letter: "To the best of my recollection, I stated to Mr. Wheeler that, if it was not satisfactory for Mr. Stewart to take one-third interest, we would go in together as we had and I would take one half interest. I think that was the letter I told him I would send him the $500, but I would not be sure of it; but from the date and the deed I think it must have been in that letter and I remember what his reply to me was." In reference to this reply, he testified that the defendant wrote that "he had money on deposit in Stuart that was bringing no interest and he would just as leave use that until he came up and then we would make a settlement." From the above, admitting everything that the plaintiff claims was in these two letters not in evidence as exhibits, it is very plain that no legal contract was entered into. The offer that defendant had made was that he and plaintiff should go in halves on the four lots. No offer to go in halves on the five lots had been made, and the exhibits preclude any possibility that any such offer had been made, and. if one had been made prior to the dates of said exhibits, it was not in existence on the 29th of March, being superseded by the offers contained in the letters. It is true that plaintiff testified that the defendant had offered him half of the property, and that he, plaintiff, had agreed to pay for it; but he says that this offer was contained in these letters, and the evidence as shown by letters prove that the plaintiff was wrong in his conclusions as to the legal effect of the contents of such letters. In passing, it would be well to note that at the time defendant wote the letter of March 29th, he had closed his deal with the former owner of these lots.

On March 31st defendant again wrote to plaintiff, which letter related to other lots owned by Jones which Jones offered for sale, and asked plaintiff what he wanted done in relation to same, and on April 1st the plaintiff wrote to the defendant the last letter in evidence in this case. In this letter he advises letting the two lots referred to in defendant's letter of the 31st go. The letter touched upon other things, and in closing says: "We will leave everything until you come up." It is not claimed that any agreement was

ever made at a later date, and it is very apparent from all of the evidence that, while both of the parties contemplated entering into a deal together in relation to the lots in question, yet it was clearly understood that whatever they did would probably have nothing to do with one of these lots, and, as to the other four, the matter was entirely up in the air, and was to be adjusted between them when they got together; and while there was a moral obligation perhaps on the part of each to reach some equitable agreement, yet there was no contract which courts could take cognizance of, and, these parties never having got together, the court not only could not make a contract for them relating to all five lots, but from the evidence as it stands in this case we can hardly see where the court could have found that there ever was a time when these parties had reached an agreement as to a joint deal on even four of the lots.

We cannot see from the correspondence when there ever was a time when the defendant could have sued the plaintiff and compelled him to pay a share of the purchase price of these lots. That being true, there was certainly no time when the plaintiff by offering to pay a part of the purchase price was entitled to compel the defendant to convey an interest in said lots.

For the reasons herein stated, we must hold that the findings of the court were not sustained by the evidence, and that the judgment of the lower court and the order denying a new trial should be reversed, and it is so ordered.